UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LARRY LYNN SCOTT, | § | |
| No. 1085947, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | NO. 3:05-CV-609-H |
| | § | |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
|     Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an order of the District Court in implementation thereof, the subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

FINDINGS AND CONCLUSIONS:

    Type of Case: This is a petition for habeas corpus relief filed by a state inmate pursuant to 28 U.S.C. § 2254.

    Parties: Petitioner Larry Lynn Scott ("Scott" or "Petitioner") is confined at the Hamilton Unit of the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID") at Bryan, Texas. Respondent is the Director of the TDCJ-CID.

    Statement of the Case: On March 12, 1993, Scott entered an open plea of guilty to the offense of burglary of a motor vehicle and pleas of true to the enhancement paragraphs in cause

1

number F92-60854-IK. The trial court deferred a finding of guilt and sentenced Scott to seven years of community supervision. As a condition of community supervision, the court ordered Petitioner to enter the Interventions drug treatment program in Wilmer, TX. Petitioner did not file an appeal.

Over the course of the next eight years, the state moved to adjudicate Scott's guilt five times, primarily based on his failure to successfully complete drug treatment. (Clerk's R. v. 1 at 35, 38-39, 48-51, 59-60, 69-70.) In response to the State's first four motions, the court declined to adjudicate Petitioner's guilt and, with his consent, repeatedly modified the conditions of his probation. (Clerk's R. v. 1 at 30, 32, 46, 55, 57, 66.) In 1999, as part of one of these modifications, the court extended Petitioner's probationary period to ten years. (Clerk's R. v. 1 at 55.) Finally, on February 14, 2002, after the State filed its fifth motion to proceed with an adjudication of guilt, the trial court judge adjudicated Scott guilty of the offense of burglary of a motor vehicle enhanced by two prior felony convictions and sentenced him to twenty-five years imprisonment. (Clerk's R. v. 1 at 77.)

Petitioner appealed his sentence to the Fifth District Court of Appeals and on April 10, 2003, the court affirmed the trial court's judgment. *Scott v. State*, No. 05-02-00841-CR (Tex. App.-Dallas Apr. 10, 2003). Scott timely filed a motion for a rehearing, which the Fifth District Court of Appeals denied on May 15, 2003. *Scott v. State*, No. 05-02-00841-CR (Tex. App.-Dallas May 15, 2003). The Texas Court of Criminal Appeals granted Scott an extension until July 11, 2003, to file a petition for discretionary review ("PDR"), but he did not file the same.[1]

---

[1] A letter included in the state court records filed by Respondent indicates that Petitioner believed that he filed a PDR. (Letter from Scott to Fifth District Court of Appeals (Oct. 17, 2003)). However, neither the Fifth District Court of Appeals nor the Texas Court of Criminal Appeals has a record of a PDR filed by Scott, and Petitioner has presented no evidence to show

On June 26, 2003, pursuant to Texas Code of Criminal Procedure article 11.07, Scott filed a habeas application challenging his conviction. *Ex parte Scott*, Appl. No. 56, 739-01 at 2. The application was dismissed by the Texas Court of Criminal Appeals on September 3, 2003, because Scott's direct appeal was still pending.[2] *Ex parte Scott*, Appl. No. 56, 739-01 at cover. Petitioner filed a second state habeas application on April 8, 2004, which was denied without written order by the Court of Criminal Appeals on July 21, 2004. *Ex parte Scott*, Appl. No. 56, 739-02 at cover, 2.

Petitioner filed the instant petition on March 23, 2005,[3] which includes three claims related to the revocation of his community supervision. On September 26, 2005, Respondent filed his answer contending that Petitioner's claims are unexhausted, procedurally-barred, time-barred and, in the alternative, without merit.

<u>Findings and Conclusions</u>: Review of Scott's claims is governed by the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") because he filed his § 2254 petition after the effective date of the AEDPA. The petition is thus subject to a one year statute of limitations. § 2244(d)(1). Absent specific circumstances set forth in Sections (d)(1)(B) through (d)(1)(D), this limitation period begins to run on "the date on which the judgment

---

that such a PDR was ever filed. (*See* Letter from Sandra Johnson, Deputy Clerk, Fifth District Court of Appeals, to Scott (Oct. 22, 2003) and Affidavit of Katie Vaughn, Deputy Clerk, Texas Court of Criminal Appeals (August 17, 2005)).

[2] Relief pursuant to article 11.07 is not available until the underlying conviction becomes final. Under Texas law, finality does not occur until the intermediate appellate court issues its mandate. *See Ex parte Johnson*, 12 S.W.3d 472, 473 (Tex. Crim. App. 2000). The Fifth District Court of Appeals issued its mandate on October 23, 2003.

[3] Under the "mailbox rule," a prisoner's federal habeas corpus petition is deemed filed when he delivers it to prison officials for mailing to the district court. *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998). Scott signed his federal habeas petition on March 23, 2005. It was filed stamped on March 28, 2005. For the purposes of the recommendation, it is assumed that Scott placed his § 2254 petition in the prison mail system on the date he signed his petition.

3

became final by the conclusion of direct review or the expiration of the time for seeking such review." § 2244(d)(1)(A). The running of the limitations period is tolled while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." § 2244(d)(2).

Petitioner's conviction became final on July 11, 2003, the last day on which Petitioner could have filed a PDR with the Texas Court of Criminal Appeals according to the order of extension dated May 1, 2003. *See Phynon v. Dretke*, No. 3:04-CV-0012-G, 2005 WL 2445435, at *2 (N.D. Tex. Sept. 30, 2005) (holding that, where a defendant is granted a extension to file a PDR but fails to file the same, his conviction becomes final upon the expiration of the extension); *Howington v. Dretke*, No. 3:03-CV-0052-P, 2005 WL 1124518, at *7 (N.D. Tex. May 10, 2005) ("When the petitioner has obtained an extension of time to file a petition for discretionary review, such extension necessarily extends the time for seeking further direct review and thus delays the finality of the judgment of conviction under 28 U.S.C. § 2244(d)(1)(A) at least until the expiration of the deadline for filing the petition for discretionary review."). The limitations period then ran for 272 days until April 8, 2004, when Scott filed his second state habeas application, which is the only application that was properly filed.[4] *See Larry v. Dretke*, 361 F.3d 890, 894 (5th Cir. 2004), *cert. denied*, 125 S. Ct. 141 (2004) (state habeas application filed before direct appeal is final is not "properly filed" and therefore, does not toll the limitations period under § 2254). The limitations period was tolled until July 21, 2004,

---

[4] Under Federal Rule of Civil Procedure 6(a), which governs the computation of time periods in federal habeas petitions, "[i]n computing any period of time prescribed or allowed by these rules... the day of the act, event, or default from which the designated period of time begins to run shall not be included." Therefore, the limitations period began running on July 12, 2003. *See Flanagan v. Johnson*, 154 F.3d 196, 200-01 (5th Cir. 1998).

4

when the Texas Court of Criminal Appeals denied Scott's second application. Thus, Scott had until October 25, 2004, to file his federal habeas petition.[5] However, Scott did not file his petition until March 23, 2005, well over four months past the expiration of the one year AEDPA limitations period.

Scott argues that the limitations period was tolled, not until July 21, 2004, but until approximately February 11, 2005, when Petitioner allegedly received notice that his second habeas application had been denied.[6] However, Scott's argument is without merit because his application was not "pending" during the six and a half month time period in which he allegedly had no notice of the denial of his application. *See Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) (holding that an application that has been denied does not remain "pending" during the time it takes to notify the applicant of the denial); *see also* § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim *is pending* shall not be counted toward any period of limitation under this subsection")(emphasis added).

Notwithstanding the untimeliness of Scott's federal petition, the limitations period may be equitably tolled under "rare and exceptional" circumstances. *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). A federal habeas petitioner has the burden of establishing that equitable

---

[5] The one-year limitations period expired on October 23, 2004. However, because that date fell on a Saturday, the limitations period ran until the following Monday. *See* Fed. R. Civ. P. 6(a) ("The last day of the period so computed shall be included, unless it is a Saturday...in which event the period runs until the end of the next day which is not one of the aforementioned days.").

[6] Scott did not discuss equitable tolling in his petition. However, in response to a show cause order issued by the magistrate judge, Petitioner alleged that he was not notified of the denial of his second 11.07 application until sometime shortly after February 7, 2005, when the clerk of the Court of Criminal Appeals responded to his request for an update on the status of his 11.07 application.

tolling applies. *Phillips*, 216 F.3d at 511. A "garden variety claim of excusable neglect does not support equitable tolling." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quoting *Rashidi v. Amer. President Lines*, 96 F.3d 124, 128 (5th Cir. 1998)). However, a delay in receiving notification of the denial of a state habeas application could qualify for equitable tolling. *Phillips*, 216 F.3d at 511. In such an instance, the diligence of the petitioner is of foremost concern, because "equitable tolling should only be applied if the applicant diligently pursues § 2254 relief." *Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001).

Scott alleges that he did not receive timely notice from the Texas Court of Criminal Appeals that it denied his second habeas application on July 21, 2004. Instead, he avers that he was forced to contact the court in February of 2005 to determine the status of his application. The mail records from the Ellis Unit, the unit at which Scott was confined until recently, support Scott's contention. A search of all mail sent or received by Scott from July 21, 2004, to February 21, 2005, revealed only two pieces of mail: an outgoing letter sent by Scott to the Texas Court of Criminal Appeals on February 2, 2005, and an incoming letter to Scott from the Court of Criminal Appeals on February 11, 2005.[7]

However, two factors weigh against applying equitable tolling principles. First, a review of Scott's actions before he received notice of the denial of his second state habeas application demonstrates that he failed to diligently keep himself informed regarding the status of his application. *See Lewis v. Cockrell*, 275 F.3d 46 (5th Cir. 2001) (holding that a district court may properly consider the diligence of a petitioner both before and after he receives delayed

---

[7] On March 15, 2006, the Magistrate Judge ordered Respondent to provide Petitioner's mail log from July 21, 2004, to February 21, 2005. Respondent provided the log as well as an affidavit from the records custodian, Eula English.

notice of the denial of his PDR); *see also Binder v. Dretke*, No. 4:05-CV-0602-Y, 2005 WL 3543350, at *3 (N.D. Tex. Dec. 22, 2005) (noting that a petitioner has an obligation to keep informed about the status of his habeas proceedings). Scott did not contact the Texas Court of Criminal Appeals regarding the status of his application until ten months after it was submitted. This delay demonstrates a lack of diligence, especially in light of the fact that Scott's first application was dismissed by the Court of Criminal Appeals slightly more than two months after it was submitted. *See Ex parte Scott*, Appl. No. 56, 739-01 at cover, 2. The Court of Criminal Appeals' rapid disposition of his first application reasonably informed Scott of the time frame in which the court would likely address his second application. Therefore, upon not receiving any communication from the court within two or three months after the submission of his application, diligence would have required that Scott make an inquiry as to the status of his application long before February 2, 2005.

Equally relevant is the fact that Scott did not act with alacrity and diligence after receiving notice in February of 2005 that his second state habeas application had been denied. *See Phillips*, 216 F.3d at 511 (petitioner acted with "diligence and alacrity" when he filed for an out-of-time appeal three days after receiving delayed notice of the denial of his PDR). Though Scott was informed that his application had been denied over six months earlier, he waited an additional forty days before filing his federal petition.

Consequently, because Petitioner has not demonstrated that he acted diligently while pursuing habeas relief in both the federal and state courts, he is not entitled to equitable tolling based on the Court of Criminal Appeals' alleged delay in notifying him of the denial of his second state habeas application. Likewise, Scott has not identified any additional circumstances

7

that might warrant equitable tolling. His status as a *pro se* petitioner, by itself, does not excuse his delay in filing his federal petition. *See Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir. 2002) (incorrect interpretation of AEDPA filing deadlines by incarcerated *pro se* prisoner did not warrant equitable tolling); *see also Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000) (noting that proceeding *pro se* is not an "exceptional circumstance" that requires equitable tolling). Consequently, no grounds for equitable tolling exist, and therefore, Petitioner's claims are time-barred.

In the alternative, even if the District Court were to find Scott's petition timely, Scott's claims are nevertheless without merit.[8] Scott first argues that after the trial court judge revoked his community supervision and adjudicated his guilt, the judge erred by sentencing him for an enhanced felony offense. Scott asserts that the enhancement paragraphs of the indictment were waived when his adjudication was deferred and he was placed on community supervision.

Petitioner's argument is patently without merit. On March 12, 1993, he pled guilty to the felony offense of burglary of a motor vehicle, and pled true to the enhancement paragraphs in the indictment that alleged he had been convicted of two prior felony offenses. (Clerk's R. v. 1 at 20-22.) At the time Scott committed the offense, Texas law provided for a sentence of twenty five years to life for a person convicted of his third felony offense. *See* Tex. Penal Code Ann. § 12.42(d) (West 1992). Scott was admonished of this law at the time of his plea. (Clerk's R v. 1

---

[8] Respondent argues that Petitioner failed to exhaust many of his claims and that his claim that the trial court judge abused his discretion by revoking his probation is procedurally barred. While a federal court may not grant relief on an unexhausted claim, a court is not barred from denying relief on an unexhausted ground. *See* § 2254(b)(1)-(b)(2). In the present case, it is clear that Scott is not entitled to relief on any of the grounds alleged in his petition. Therefore, the court need not address Respondent's limitations arguments or the procedural defenses asserted.

at 23.) Thereafter, the trial court judge deferred adjudication of Scott's guilt and placed him on community supervision for a period of seven years. (Clerk's R. v. 1 at 24-26.) When Scott violated the terms of his probation for the fifth time and was adjudicated guilty, Texas law provided that "all proceedings, including assessment of punishment, pronouncement of sentence, granting of probation, and defendant's appeal continue as if the adjudication of guilt had not been deferred." *See* Tex. Code Crim. Proc. Ann. art. 42.12 § 5(b) (West 1992). Therefore, the trial court judge did not err by sentencing Scott to a term of confinement consistent with the commission of a third felony offense.

Scott also argues that he was denied the effective assistance of counsel at the revocation hearing because the State "suprise[d]" counsel by moving to revoke Scott's probation for failure to report to his probation officer for several weeks and Scott's counsel was unprepared to defend Petitioner against these charges. While a defendant is entitled to the effective assistance of counsel at a probation revocation proceeding, *see Mempa v. Ray*, 389 U.S. 128, 137, 88 S. Ct. 254, 258 (1967); *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), Scott's allegations regarding his counsel's alleged unpreparedness are not supported by the record. In its motion to proceed with an adjudication of guilt, the State alleged that Petitioner violated two conditions of his parole:(1) that he tested positive for cocaine and (2) that he did not report to his probation officer during the weeks of October 26, 2001; November 9, 2001; December 7, 2001; and December 21, 2001. (Clerk's R. v. 1 at 80-81.) At the revocation hearing, the State elected to proceed only on the second allegation. (Clerk's R. v. 1 at 7.) The transcript from Petitioner's probation revocation hearing reveals that Scott's counsel, Jennifer Balido, was prepared to mount a defense; she cross-examined Petitioner's probation officer regarding his awareness of a work-

9

related injury that may have prevented Scott from reporting, conducted a thorough direct of examination of Petitioner in which he admitted that he failed to report and explained his reasons for doing so, attempted to offer into evidence a letter from Scott's employer, and conducted a direct examination of Petitioner's wife. (Rep.'s R. v. 1 at 12-17, 19-32, 34-44.) Petitioner has presented no evidence in the record showing his counsel was unprepared to defend him against the State's allegations; nor has he presented evidence to demonstrate how additional preparation by his counsel would have affected the outcome of his case. *See Strickland*, 466 U.S. at 687-88, 694, 104 S. Ct. at 2064, 2068 (holding that habeas relief is foreclosed unless a petitioner establishes that his attorney's performance was constitutionally deficient and that, "but for counsel's unprofessional errors, the result of the proceeding would have been different").

Finally, Petitioner alleges that the trial court judge abused his discretion by revoking Scott's probation because the State failed to prove that he violated a condition of his probation. *See Cardona v. State*, 665 S.W.2d 492, 493-94 (Tex. Crim. App. 1984) (noting that a probation revocation is reviewed under an abuse of discretion standard). However, the record again does not support Scott's assertions. While Scott pled "not true" to the allegation that he did not report to his probation officer for four separate weeks during the months of October, November and December of 2001, (Clerk's R. v. 1 at 75-76), he readily admitted missing all of these meetings when he took the stand at the revocation hearing. (Rep.'s R. v. 1 at 20, 23, 26.) The bulk of his testimony focused on his reasons for missing the meetings, the changes he had made in his life since he had stopped using drugs and that he was trying to be a "better servant to God." (Rep.'s R. v. 1 at 24-32.) Scott's testimony that he missed the four weeks of meetings, combined with the testimony of his probation officer who confirmed that he failed to report on four separate

occasions, (Rep.'s R. v. 1 at 11), supported the judge's determination that Petitioner violated the terms of his probation. *See*, *e.g.*, *Battle v. State*, 571 S.W.2d 20, 22 (Tex. Crim. App. 1978)(holding that in a probation revocation hearing the trial court judge is the sole trier of fact and determines the credibility of the witnesses and the weight to be given to their testimony). Therefore, the trial court judge did not abuse his discretion when he revoked Petitioner's probation.

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the district court dismiss the petition as time-barred, or in the alternative, deny the petition on the merits. A copy of this recommendation will be sent to Petitioner and to counsel for Defendant.

Signed this 5th day of May, 2006.

_____
Wm. F. Sanderson Jr.
United States Magistrate Judge

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996)(*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.